UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ABDOLHAMID JOHN AHMADI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:10-cv-00575-RCJ-VPC |
| vs. | ) | |
| | ) | |
| FIRST HORIZON HOME LOAN CORP. et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a standard foreclosure case involving one property. The Complaint is a forty-five-page fraud-and-conspiracy-type complaint listing eleven causes of action. The case is not part of MDL Case No. 2119. Two motions are pending before the Court: a motion to remand and a motion to dismiss. For the reasons given herein, the Court denies the motion to remand and grants the motion to dismiss in part.

**I.   FACTS AND PROCEDURAL HISTORY**

Abdolhamid John Ahmadi gave lender First Horizon Home Loan Corp. ("First Horizon") a $273,296 promissory note to purchase property at 461 South Sand Crane Circle, Sparks, NV 89436 ("the Property"). (*See* Note, Nov. 10, 2005, ECF No. 16-1, at 2; Deed of Trust ("DOT"), Nov. 10, 2005, ECF No. 16-1, at 9). The trustee on the DOT was Stewart Title of Northern Nevada ("Stewart"). (DOT 2).

Plaintiff defaulted in or about February 2009, and LSI Title Agency ("LSI"), as agent for

1  Regional Service Corp. ("RSC"), filed a Notice of Default ("NOD"). (*See* NOD, Mar. 25, 2010,
2  ECF No. 16-1, at 33).  Approximately one week later, MERS, as nominee for First Horizon,
3  purported to transfer "all beneficial interest under [the DOT]" to EverHome Mortgage Corp.
4  ("EverHome"), (*see* Assignment of DOT, Mar. 31, 2010, ECF No. 16-1, at 38), and EverHome
5  immediately substituted RSC as trustee for Stewart, (*see* Substitution of Trustee, Mar. 31, 2010,
6  ECF No. 16-2, at 2).  RSC scheduled a trustee's sale for August 23, 2010, but no evidence of a
7  completed sale appears in the record. (*See* Notice of Trustee's Sale ("NOS"), June 26, 2010, ECF
8  No. 16-2, at 5).

9        This sequence of events indicates a factual question concerning the propriety of the
10 foreclosure under Nevada Revised Statutes ("NRS") section 107.080(2)(c).  Regardless of the
11 language in the DOT, MERS is not in fact the beneficiary because it does not own the debt.
12 MERS also did not have the ability to transfer the interest in the loan without more evidence of
13 its agency on behalf of First Horizon in this regard than being named as nominee on the DOT.
14 In other words, based on the evidence adduced, the DOT remains with First Horizon at this
15 point, or with whatever entity currently holds the note, by operation of law.  EverHome may
16 have a worthless piece of paper if it only has an "assigned" deed of trust without having had the
17 note that the deed of trust secures negotiated to it. *See In re Hawkins*, BK-S-07-13593-LBR,
18 2009 WL 901766, at *4 (Bankr. D. Nev. Mar. 31, 2009) (citing Restatement (Third) of Property
19 § 5.4 cmt. a (1997); 4 Richard R. Powell, *Powell on Real Property* § 37.27[2] (2000)); *Rodney v.*
20 *Ariz. Bank*, 836 P.2d 434, 436 (Ariz. App. 1992) (quoting *Hill v. Favour*, 52 Ariz. 561, 568
21 (1938)); *Ord v. McKee*, 5 Cal. 515, 515 (1855) ("A mortgage is a mere incident to the debt
22 which it secures, and follows the transfer of the note with the full effect of a regular
23 assignment."). MERS purported in the "Assignment of Deed of Trust" to transfer the "beneficial
24 interest" to EverHome for value, which would in fact give EverHome the right to enforce the
25 note even without negotiation, *see* Nev. Rev. Stat. § 104.3203(2), but MERS may not have had

the ability to make such a transfer.[1] If EverHome is the entity that commanded RSC to foreclose, both EverHome and RSC may be liable for wrongful foreclosure, because EverHome cannot suffer a default if it does not own the debt. At a minimum, the foreclosure may have been statutorily invalid because RSC filed the NOD, and although it had been substituted as trustee, it was substituted in by EverHome, which may not have had the beneficial interest because MERS was not able to transfer it to EverHome by merely purporting to assign the DOT. Furthermore, EverHome did not even purport to substitute RSC as the trustee until March 31, 2010, six days after RSC had already filed the NOD. In other words, EverHome may have commanded RSC to file the NOD before EverHome owned the beneficial interest in the loan, even assuming MERS had authority from First Horizon to transfer it, which is doubtful.

## II.  ANALYSIS

### A.  Motion to Remand

#### 1.  Federal Question Jurisdiction

The Court denies the motion to remand, as there is federal-question jurisdiction, which was the basis of removal. Plaintiff has pled a cause of action for a violation of NRS section 649.370, which incorporates the standards of the Fair Debt Collection Practices Act ("FDCPA"). Section 649.370 creates no private cause of action,[2] so the claim that refers to FDCPA necessarily relies directly on the federal cause of action. Even if the Court found an implied state cause of action, it would necessarily require substantial interpretation of federal law, because a violation of the state statute is defined purely by reference to FDCPA. *See Mesi v.*

---

[1] Defendants could cure this defect via an affidavit from First Horizon indicating that First Horizon specifically commanded MERS to transfer First Horizon's interest in the note to EverHome, or that MERS' agency for First Horizon extended this far as a general matter.

[2] Neither "damages," "cause of action," nor "attorney's fees" appear anywhere in Chapter 649. The Chapter provides only for criminal penalties or administrative fines. *See* Nev. Rev. Stat. §§ 649.435, 649.440.

*Wash. Mut. F.A.*, No. 3:09-CV-582 JCM (VPC), 2010 WL 3025209, at *2 (D. Nev. July 30, 2010) (Mahan, J.). *Contra Atkinson v. Homecomings Fin., LLC*, No. 3:10-cv-00418-LRH-VPC, 2010 WL 3271741, at *2 (D. Nev. Aug. 16, 2010) (Hicks, J.) ("[C]ontrary to Defendants' position, the act defines a state claim that is separate from its federal counterpart. Although a federal regulation is expressly noted in the Nevada statute, the reference to the federal act only provides a framework for determining the type of claim that can be brought under the state statute."). The Court finds that the *Mesi* case is better reasoned. Although an appropriately drafted state statute could incorporate federal standards in such a way that a violation of federal standards would be sufficient, but not necessary, to constitute a violation of the state statute, in the present case the Nevada Legislature has made the reach of section 649.370 coextensive with FDCPA and its attendant regulations. *See* Nev. Rev. Stat. § 649.370 ("A violation of any provision of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1682 *et seq.*, or any regulation adopted pursuant thereto, shall be deemed to be a violation of this chapter."). The *Atkinson* court reasoned that because the Nevada Supreme Court had resolved other sections of Chapter 649 without reference to federal law, a section 649.370 claim could be resolved without the substantial interpretation of federal law. *See Atkinson*, 2010 WL 3271741, at *2 (citing *State v. Hartford Accident & Indem. Co.*, 477 P.2d 592 (Nev. 1970)). But an examination of the characteristics of certain sections of Chapter 649 gives us no clue at all as to whether all sections of Chapter 649 share the same attributes. *Hartford* did not involve the resolution of any section of Chapter 649 that made reference to federal law, much less section 649.370, which was enacted thirty-seven years after *Hartford* was decided. *See* 2007 Nev. Stat. 2500; *Hartford*, 477 P.2d at 593 (interpreting former section 649.080, which did not purport to rely on any federal law). The fact that some sections of Chapter 649 can be applied without interpreting federal law says nothing of whether any other particular section therein can be. Plaintiff has not pled any violation of Chapter 649 except section 649.370, which is by its text coextensive with FDCPA.

Therefore, any claim under section 649.370 necessarily requires the substantial interpretation of federal law, and there would be federal jurisdiction under 28 U.S.C. §§ 1441 and 1331 even if a private cause of action lied under Chapter 649 such that Plaintiff did not need to rely on FDCPA directly. The Court therefore need not address whether certain other state law claims in the Complaint are completely preempted by TILA, HOEPA, and/or RESPA, as Defendants also argue.

### 2. Diversity Jurisdiction

Furthermore, the only non-diverse Defendant is Stanley S. Silva, whose only connection to the case is that he signed the NOD. He may have been fraudulently joined, but the Court need not examine the question at this time. Also, doe defendants are ignored for the purposes of diversity. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Cripps v. Life Ins. Co. of Am.*, 980 F.2d 1261, 1266 (9th Cir. 1992) (citing *id.*); *Bryant v. Ford Motor Co. (Bryant II)*, 886 F.2d 1526, 1528 (9th Cir. 1989) (citing *id.*) ("Congress obviously reached the conclusion that doe defendants should not defeat diversity jurisdiction."), *cert. denied*, 493 U.S. 1076 (1990). The 1988 amendment to § 1441(a) that established the current rule overruled the Ninth Circuit's 1987 ruling in *Bryant I*. *Cripps*, 980 F.2d at 1266 & n.5 (citing *Bryant v. Ford Motor Co. (Bryant I)*, 832 F.2d 1080, 1082–83 (9th Cir. 1987) (en banc)).

Next, the subject matter of the lawsuit is the $273,296 loan and the property securing it. The loan is in default and in fact the property has been sold. Plaintiff seeks to invalidate the completed transfer of the property and also to prevent any future foreclosure. If Plaintiff were to win all his claims as pled, Defendants would lose more than $75,000 in property and potentially be left with no security interest in the property. The amount-in-controversy requirement is satisfied.

### B. Motion to Dismiss

1   There are no meritorious claims in this case except those for injunctive and declaratory
2 relief based on a violation of NRS section 107.080.  It is not clear if the parties have attempted
3 mediation or if Plaintiff is eleigible for the state Foreclosure Mediation Program ("FMP").[3]

4   Moreover, rather than responding to the motion to dismiss, Plaintiff's counsel, as he
5 typically does in these cases, has filed a "Notice of Intent to Withhold Response to Motion to
6 Dismiss Pending Ruling on Motion to Remand to State Court."  This constitutes consent to
7 granting the motions. Local R. Civ. Prac. 7-2(d).  Counsel has no authority to institute a partial
8 stay of a case unilaterally, which is what these notices essentially purport to do.  And the
9 requirement to file an opposition is not a "burden" imposed by a potentially improper removal,
10 as counsel has argued in other similar cases, because Defendant surely would have filed the same
11 motion to dismiss had the case not been removed.  In fact, Plaintiff would only have had ten (10)
12 days to respond to that motion in state court before failure to respond constituted consent to
13 granting it, whereas he had fifteen (15) days to respond in this Court. *Compare* Nev. Dist. Ct. R.
14 13(3), *with* Local R. Civ. Prac. 7-2(b).  Removal therefore had the effect of giving Plaintiff an
15 additional five days to respond to this inevitable motion to dismiss, not to mention the additional
16 delay in Defendant's filing of the motion created by the removal process itself.  There is simply
17 no legitimate excuse for failing to respond.  This constitutes consent to granting the motion to
18 dismiss under Local Rule 7-2(d).

19   Finally, Plaintiff has filed a "supplement" to the "response" to the motion to dismiss.
20 The Court grants Defendants' motion to strike this pleading.  The supplement is approximately
21 three months late.  The arguments therein do not rescue any of the failed claims in any case.

---

[3]To be eligible for the Nevada Foreclosure Mediation Program, the homeowner must occupy the home, must not have filed for bankruptcy protection, and must not have surrendered the home to the lender.  The homeowner must request mediation within thirty (30) days of receiving the NOD, or the right to mediate may be waived.  Foreclosing entities are required to attach instructions on how to request mediation to any NOD filed after July 1, 2009.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Remand (ECF No. 10) is DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 7) is GRANTED in part and DENIED in part. All causes of action are dismissed except those for injunctive relief, declaratory relief, and for violation of NRS section 107.080.

IT IS FURTHER ORDERED that the Motion to Strike (ECF No. 27) is GRANTED.

IT IS FURTHER ORDERED that Defendants will not transfer the Property or take any action to evict Plaintiff or his tenants, if any, from the Property for one-hundred (100) days. During this period, Plaintiff will make full, regular monthly payments under the note every thirty (30) days, with the first payment due ten (10) days after the date of this order. The amount of each payment will be according to the monthly payment as of the date of the NOD. Failure to make monthly payments during the injunction period will result in a lifting of the injunction. Plaintiff need not pay late fees or cure the entire amount of past default at this time but may be required in equity to cure the entire past default as a condition of any future permanent injunction.

IT IS FURTHER ORDERED that during the injunction period the parties will engage in the state Foreclosure Mediation Program, if available. If not available, Defendants will conduct a private mediation with Plaintiff in good faith. The beneficiary must send a representative to the mediation with actual authority to modify the note, although actual modification is not required. Plaintiff will provide requested information to Defendants in advance of the mediation in good faith.

IT IS FURTHER ORDERED that Plaintiff's failure to make interim payments or to participate in mediation will result in dismissal of the case.

IT IS SO ORDERED.

DATED: This 30th day of March, 2011.

_____
ROBERT C. JONES
United States District Judge